761 So.2d 182 (2000)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
A.L. (Bud) BROWN.
No. 1999-JP-01569-SCT.
Supreme Court of Mississippi.
June 8, 2000.
Luther Brantley, III, Irene Mikell Buckley, Jackson, Attorneys for Appellant.
Taylor Tucker, Louisville, Attorney for Appellee.
EN BANC.
McRAE, Justice, for the Court:
¶ 1. This matter is before the Court on a recommendation filed by the Mississippi Commission on Judicial Performance (hereinafter the "Commission") to fine and publicly reprimand A.L. (Bud) Brown, a Winston County Justice Court Judge. This recommendation is granted, and as such, Judge Brown is publicly reprimanded and fined $500. This public reprimand *183 shall be forwarded to the Circuit Court of Winston County to be read in open court on the first day of the next court term by the presiding circuit court judge with Judge Brown present.

PROCEDURAL HISTORY
¶ 2. On April 5, 1999, the Commission filed a formal complaint against Judge Brown. The complaint contained three counts which charged that Judge Brown violated, through willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, Canons 1, 2A, and 2B of the Code of Judicial Conduct of Mississippi Judges, Rule 1.05 of the Uniform Rules of Justice Court, and Section 177A of the Mississippi Constitution of 1890. The Commission held a hearing on June 11, 1999, where it determined that Judge Brown had violated these standards of judicial conduct and recommended that this Court issue him a public reprimand, a $500 fine and order him to pay all costs.

FACTS
¶ 3. The Commission found by clear and convincing evidence presented at the hearing on June 11, 1999, that on the November 18, 1994, Judge Brown's son, Alex Brown, Jr., was arrested for DUI. Judge Brown called the judge assigned to the case, Noxubee County Justice Court Judge Sherlene Boykin, and asked for her help in getting the DUI dismissed. Judge Brown also contacted the arresting officer, John Harris, on numerous occasions both before initial trial and throughout his son's appeal.
¶ 4. Officer Harris testified that on November 18, 1995, he was called to the scene of a one-vehicle accident. A white pickup was wedged in some bushes off the road. Alex Brown, the driver, was arrested for DUI. At the station, Alex called his father who asked to speak to Officer Harris. Judge Brown told the officer that his son had not had anything to drink, and he was coming over. Subsequent to that evening, Judge Brown called Officer Harris several times inquiring whether there was there any way Harris could help his son in reference to the DUI.
¶ 5. Alex Brown was convicted of DUI on March 7, 1995, in the Noxubee County Justice Court. After the trial was over, Officer Harris alleged that Judge Brown was upset and threatened to kill Harris. Harris responded "not if I kill you first."
¶ 6. Mississippi Highway Patrol Master Sergeant Billy Joe Mahaffey testified that after the initial DUI trial, Judge Brown called him several times to arrange meetings between Judge Brown and Officer Harris. Mahaffey testified that, "[t]he first one was wanting to get together because they thought there was hard feelings between him and Officer Harris, that they wanted to have a meeting to iron out their differences...." Mahaffey arranged a second meeting at County Attorney Ricky Walker's office in Macon with Walker, Harris and Alex Brown's attorney, Jyles Eaves.
¶ 7. Justice Court Judge Sherlene Boykin testified that prior to Alex Brown's DUI trial Judge Brown called her several times and that on each occasion mentioned his son's pending DUI trial.
¶ 8. At the hearing, Judge Brown testified in his own defense. He stated that he received a call that his son had been arrested for DUI and that he had asked to speak to Harris, the arresting officer. When Harris got on the line, Judge Brown asked whether his son was hurt. When Harris told him that Alex had some cuts on him, Judge Brown asked Harris to take Alex to the hospital. When Judge Brown got to the hospital, Officer Harris had left a message asking to see him, and Judge Brown spoke to Harris. Judge Brown testified that after that night he had several conversations with Harris to see if he had gotten the results back from the blood tests. Judge Brown also admitted to speaking with Judge Boykin several times prior to trial. Judge Brown denied having *184 threatened to kill Harris, but told Harris "if you think I said it, I apologize." Judge Brown testified that he attended only one meeting with Officer Harris and that was set up by Master Sergeant Mahaffey. On cross-examination, Judge Brown apologized for his actions but asked for understanding that he was "acting as a father."
ISSUES
I. DID THE CONDUCT OF A.L. BROWN CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890 AS AMENDED?
II. SHOULD A.L. BROWN BE PUBLICLY REPRIMANDED, FINED $500 AND ASSESSED THE COSTS OF THIS PROCEEDING BY THE MISSISSIPPI SUPREME COURT, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?
LAW AND ANALYSIS
I. DID THE CONDUCT OF A.L. BROWN CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890 AS AMENDED?
¶ 9. Judge Brown was charged with willful misconduct or conduct which would bring the judicial office into disrepute. This case implicates Canons 1, 2A, and 2B of the Code of Judicial Conduct of Mississippi Judges, Rule 1.05 of the Uniform Rules of Justice Court, and Section 177A of the Mississippi Constitution of 1890. It is clear that Judge Brown acted in violation of these judicial standards. Judge Brown admitted to making calls to both Officer Harris and Judge Boykin. It matters not that he was not acting in his official capacity when he made the calls. In re Inquiry Concerning Baker, 535 So.2d 47, 50-51 (Miss.1988) (citing In re Kneifl, 217 Neb. 472, 351 N.W.2d 693, 695-96 (1984) (conduct prejudicial to the administration of justice includes conduct which would justify a reasonable man in believing that a result reached by a judge was achieved because of his position and prestige)). "The findings of the Commission must be based upon clear and convincing evidence." Mississippi Comm'n on Judicial Performance v. Ishee, 627 So.2d 283, 286 (Miss.1993); see also Miss. Comm. on Judicial Performance R. 8 D.
¶ 10. This Court conducts a de novo review of judicial misconduct proceedings. Although this Court is not bound by the findings of the Commission, it gives great deference to the decision of the Commission when those findings are based on clear and convincing evidence. Mississippi Comm'n on Judicial Performance v. Dodds, 680 So.2d 180, 190 (Miss.1996); Mississippi Judicial Performance Comm'n v. Peyton, 555 So.2d 1036, 1038 (Miss.1990).
¶ 11. Judge Brown admitted having made calls to Harris, the arresting officer, Sergeant Mahaffey, Harris's supervisor, and Judge Boykin, the justice court judge, on behalf of his son. He denied, however, that in doing so that he was doing anything more than what a concerned father would do. Additionally, he denied threatening Officer Harris. Notwithstanding Judge Brown's denials of misconduct, his admission that he contacted these officials with regard to his son's DUI irrefutably supports a finding of misconduct.
¶ 12. Other jurisdictions have dealt with judges attempting to influence other judges on behalf of family members. In In re Snow's Case, 140 N.H. 618, 674 A.2d 573 (1996), a municipal court judge's brother *185 received a speeding ticket and the judge called the officer who issued the ticket. The committee that heard the judge's case found that the judge was aware that his telephone call, whether made innocently or not, would result in preferential treatment of his brother. Thus, the court held, regardless of whether the judge's intentions were innocent, "the appearance that Judge Snow intervened to obtain favorable treatment from the police for his brother plainly undermines public confidence in the integrity and impartiality of the judiciary." Id. at 578.
¶ 13. In In re Del Rio, 400 Mich. 665, 256 N.W.2d 727, 744 (1977), a judge called an officer into his chambers and told him that a ticket issued to a friend driving the judge's car was improperly issued. The Court held that "[t]his sequence of events constituted "ticket-fixing" in clear violation of Canons 1 and 2 of the Code of Judicial Conduct." Id.
¶ 14. In In re Judge Santini, 126 N.J. 291, 597 A.2d 1388 (1991), a municipal court judge was charged with having telephoned another municipal court judge, a municipal court clerk, and a zoning officer regarding the case of a former client accused of various zoning violations. The New Jersey Supreme Court ordered the judge to be publicly reprimanded finding that the judge's actions "would erode the public's confidence in the integrity and impartiality of the judiciary." Id. at 1392.
¶ 15. As these cases demonstrate, the Commission's findings of misconduct were not in error and are in fact supported the clear and convincing evidence of Judge Brown's own admissions.

II. SHOULD A.L. BROWN BE PUBLICLY REPRIMANDED, FINED $500 AND ASSESSED THE COSTS OF THIS PROCEEDING BY THE MISSISSIPPI SUPREME COURT, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?
¶ 16. Judge Brown argues that even if he is guilty of doing that with which the Commission has charged him, the recommended punishment, a public reprimand, a $500 fine, and costs, is not commensurate with what has been imposed on other judges.
¶ 17. The Commission argues that the sanctions recommended are consistent with similar cases brought before this Court. Public reprimands are serious sanctions and have been given to judges for such things as altering judgments after an ex parte communication, Mississippi Comm'n on Judicial Performance v. Underwood, 644 So.2d 458 (Miss.1994); for refusal by judge to allow a debtor to redeem property, In re Mullen, 530 So.2d 175 (Miss.1988); for utilizing criminal process to collect bad checks, In re Inquiry Concerning a Judge Odom, 444 So.2d 835 (Miss.1984); and failing to keep records and collecting court costs from county where cases never docketed, In re Lambert, 421 So.2d 1023 (Miss.1982).
¶ 18. The conduct engaged in by Judge Brown was serious and warrants sanctions. This Court has clearly stated several factors to be weighed in determining whether a judge should be publicly reprimanded:
1. The length and character of the judge's public service.
2. Positive contributions made by the judge to the courts and the community.
3. The lack of prior judicial precedent on the incident issues.
4. Commitment to fairness and innovative procedural form on the part of the judge.
5. The magnitude of the offense.
6. The number of persons affected.
7. Whether moral turpitude was involved.
In re Baker, 535 So.2d at 54.
¶ 19. Applying these factors here, Judge Brown has served for nearly twenty years as a Justice Court Judge. The record does not otherwise reflect Judge Brown's public service or service to the community. *186 Numerous Mississippi judges have been sanctioned for engaging in ex parte communications and for abuse of the judicial office. Judge Brown used his judicial position in an attempt to influence the outcome of his son's case. The number of people affected by Judge Brown's actions include another judge, law enforcement officers and the future of his own son. There was no evidence adduced regarding Judge Brown's positive contributions made to the courts and the community or Judge Brown's record to fairness and use of innovative procedural form. The only mitigation attempted by Judge Brown is an explanation that he was only acting as a father in doing what he did.
¶ 20. Based on our assessment of all of the factors, we conclude that a public reprimand is appropriate. In Mississippi Comm'n on Judicial Performance v. Justice Court Judge R.R., 732 So.2d 224, 234 (Miss.1999)[1], we listed numerous occasions in which this Court has held a public reprimand was warranted by the facts of the case. Given the facts herein, a public reprimand is consistent with prior penalties issued by this Court in other cases of judicial misconduct.
¶ 21. The Commission also requested that Judge Brown be assessed for the costs. This Court recently held that "an assessment of such costs is in keeping with precedent of this Court and is reasonable where `the complaining party is on notice that such costs are being sought and where the behavior of the complaining party is the reason for incurring of the costs.'" Mississippi Comm'n on Judicial Performance v. A Municipal Court Judge, 755 So.2d 1062, 1065 (Miss.1999)(quoting Mississippi Comm'n on Judicial Performance v. Russell, 724 So.2d 873, 874 (Miss. 1998)). The Judge was on notice that the Commission requested that costs be assessed against him.
¶ 22. In accordance with this Court's precedents, we assess costs of $407.75 against Judge Brown.

CONCLUSION
¶ 23. For these reasons, we hold that, (1) Winston County Justice Court Judge A.L. (Bud) Brown committed willful judicial misconduct in making ex parte contacts with the judge assigned to his son's DUI case, in contacting the arresting officer, and in contacting that officer's supervisor, (2) that the appropriate sanction for Judge Brown is a public reprimand and a fine of $500, and (3) Judge Brown is so reprimanded and fined. Costs in the amount of $407.75 are taxed to Judge Brown.
¶ 24. A copy of this opinion shall be forwarded by the clerk of this Court to the Circuit Court of Winston County with instructions that the presiding circuit court judge read this opinion in open court on the first day of the next court term with Judge Brown present.
¶ 25. A.L. (BUD) BROWN, A JUSTICE COURT JUDGE IN WINSTON COUNTY, SHALL BE PUBLICLY REPRIMANDED, FINED $500, AND ASSESSED WITH TOTAL COSTS OF $407.75 TO BE PAID WITHIN THIRTY (30) DAYS.
PRATHER, C.J., PITTMAN AND BANKS, P.JJ., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.
NOTES
[1] In Judge R.R., the Court found that a private reprimand was warranted for a judge's comments to clerk that the clerk "checked out" all the men that came into office and that clerk also "checked out" the judge.