*1141 LAMAR, Justice,
for the Court:
¶ 1. The Mississippi Commission on Judicial Performance recommends that Teresa Brown Dearman, Justice Court Judge for the West District of Stone County, be publicly reprimanded and ordered to pay costs of $100 for attempting to influence another judge in a matter involving Judge Dearman’s friend. Judge Dearman joins the Commission’s recommendations and has admitted to all charges of misconduct. After reviewing the record, we find the recommended sanctions are insufficient. We order that Judge Dearman be suspended from office for thirty days without pay in addition to a public reprimand and costs of $100.
FACTS
¶ 2. The Commission filed a formal complaint against Judge Dearman on January 19, 2011. It alleged that Judge Dearman had violated Canons 1 (charging judges to establish, maintain, and enforce high standards of conduct to uphold the integrity of the judiciary), 2A (charging judges to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), 2B (charging judges to avoid lending the prestige of their office to advance the private interests of others), and 3B(2) (charging judges to be faithful to the law and not to be swayed by partisan interests), when she initiated a telephone call to Circuit Court Judge Linda L. Nobles of the First Judicial District of Florida on November 5, 2010. The Commission averred that Judge Dearman reached the voice mailbox of Judge Nobles’s judicial assistant, identified herself as a justice court judge in Mississippi, and recommended that Judge Nobles set bond for a criminal defendant, a longtime friend. It further averred that Judge Dearman personally guaranteed the defendant’s appearance if Judge Nobles granted the bond. According to the formal complaint, Judge Dearman left her telephone number and requested that Judge Nobles return her call.
¶ 3. Judge Dearman did not answer the formal complaint but entered into an agreed statement of facts and proposed recommendation with the Commission. The agreed statement of facts essentially reiterated the factual averments in the complaint, except that it clarified that Judge Dearman was a friend of the defendant’s family (not the defendant) and that Judge Dearman requested Judge Nobles to call if she had any questions. The agreed statement of facts also set forth that Judge Dearman never spoke directly with Judge Nobles and that Judge Dear-man’s call had no direct effect on the setting of bond, since the bond hearing had been held prior to the phone call. Judge Dearman agreed that her conduct violated Canons 1, 2A, 2B, and 3B(2), and is sanc-tionable under Section 177A of the Mississippi Constitution. Judge Dearman agreed to the sanction of a public reprimand and costs of $100. The Commission and Judge Dearman move this Court to accept the agreed findings of fact and recommendation for discipline.
DISCUSSION
¶ 4. This Court must undertake an independent inquiry of the record, as we are vested with the sole power to impose sanctions in judicial misconduct cases.[1] “In doing so, we will accord careful consideration to the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the wit *1142 nesses.”[2] We may “accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission.”[3]
¶ 5. We agree that Judge Dear-man’s conduct violates Canons 1, 2A, 2B, and 3B(2), and is sanctionable under Section 177A of the Mississippi Constitution. Section 177A provides in relevant part that “we may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for ... (b) willful misconduct in office; ... or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” [4] To be willful under Section 177A, the misconduct must be “done willfully or with gross unconcern and generally in bad faith[.]”[5] And “conduct prejudicial to the administration of justice that brings the judicial office into disrepute” necessarily includes all willful misconduct.[6] But it can also mean actions undertaken through negligence or ignorance.[7]
¶ 6. We agree with the Commission that Judge Dearman’s conduct falls under subsections (b) and (e) of Section 177A, as Judge Dearman allowed her relationship with the defendant’s family to influence her judgment by willfully contacting another jurisdiction on a pending criminal matter. Judge Dearman knew or should have known that such contact and misuse of power is prohibited by the Code of Judicial Conduct. Therefore, we must determine whether the recommended sanction is appropriate.
¶ 7. This Court considers the following six Gibson factors when sanctioning a judge:
(1) The length and character of the judge’s public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances.[8]
And we have ruled that the “guiding factor in assigning an appropriate sanction is that if it fits the offense, and this is best measured by comparison with sanctions handed down in prior cases for the listed offense.” [9]

1. The length and character of the judge’s public service.

¶ 8. Judge Dearman has been a justice court judge for six years. The record is silent as to the character of her public service.

2. Whether there is any prior caselaw on point.

¶ 9. The Commission and Judge Dear-man cite four cases that involve justice court judges who tried to use their positions to benefit relatives or friends in *1143 pending cases. In Mississippi Commission on Judicial Performance v. Brown, Justice Court Judge A.L. Brown’s son was arrested for driving under the influence (DUI).[10] Judge Brown contacted the judge assigned to his son’s case and the arresting officer and asked for help in dismissing the charge.[11] He also contacted the arresting officer’s supervisor on behalf of his son.[12] Based on Judge Brown’s misconduct, this Court imposed a public reprimand, a $500 fíne, and assessed Judge Brown with costs.[13]
¶ 10. Similarly, in Mississippi Commission on Judicial Performance v. Cole, Judge Cecil Cole used his position as justice court judge to intervene in his grandson’s DUI case.[14] He entered an order reinstating his grandson’s driver’s license until the disposition of the DUI case.[15] After his grandson’s conviction, Judge Cole also approached the Tate County Sheriff in an attempt to have the grandson serve his sentence in the Tate County Detention Facility instead of the state facility.[16] This Court imposed a public reprimand and costs, noting that the case was Judge Cole’s first infraction and that he had cooperated with the Commission and had entered into an agreed statement of facts and proposed recommendation.[17]
¶ 11. And in Mississippi Commission on Judicial Performance v. Thompson, this Court imposed a sanction of a public reprimand and costs upon Judge Rickey Thompson for his misconduct in attempting to talk to another judge about a pending case in which he was familiar with the litigants.[18] In that case, Judge Thompson also instructed the deputy clerk not to send a warrant.[19] In sanctioning Judge Thompson, this Court noted that he had one prior disciplinary action.[20] It also found that his actions did not amount to moral turpitude, as he did not attempt to persuade the judge not to sign the arrest warrant, and the warrant was in fact executed.[21]
¶ 12. But in Mississippi Commission on Judicial Performance v. Brown, this Court removed Justice Court Judge Billy Brown from office and assessed costs for his interference in his son’s domestic-abuse case.[22] Judge Brown ordered the release of his son from jail, arranged to have the case remanded to the file, and threatened his son’s wife.[23] He also contacted the prosecutor and arresting officer, asking them to dismiss the charges.[24] In determining the appropriate sanction, this *1144 Court found the case involved multiple instances of misconduct and that Judge Brown previously had been disciplined for similar misconduct.[25] It also found that his conduct involved moral turpitude.[26]

3. The magnitude of the offense and the harm suffered.

¶ 13. Judge Dearman impermissibly attempted to advance the private interests of others in a pending criminal matter and allowed her social relationships to influence her judgment and conduct. Such impropriety erodes the public confidence in our judiciary. While her conduct did not cause any direct harm to the litigants in the Florida case, it undoubtedly causes the public to doubt the integrity and independence of the judiciary.
4. Whether the misconduct is an isolated incident or evinces a pattern of conduct.
¶ 14. This is the second formal disciplinary action taken against Judge Dear-man. This Court recently sanctioned Judge Dearman with a public reprimand, suspension for thirty days without pay, and assessment of costs for numerous, unrelated violations based on misconduct spanning from April 2006 through May 2009.[27] Her conduct in this case occurred in November 2010, only two months after a joint motion for approval of recommended sanctions was signed and filed in this Court in Dearman Z.[28] In light of that fact, we find her conduct in this case evinces a pattern of misconduct.

5. Whether moral turpitude was involved.

¶ 15. This Court has ruled that moral turpitude “includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.”[29] We also have said that a finding of moral turpitude “must involve some immorality”[30] and must cross the line “from simple negligence or mistake, to willful conduct which takes advantage of a judge’s position for greed or other inappropriate motives.”[31]
¶ 16. While Judge Dearman’s conduct in this case was highly inappropriate, we do not find it involved moral turpitude. We find this case most analogous to Thompson, in which we found no moral turpitude. Judge Dearman’s conduct did not “involve some immorality”[32] nor cross the line “from simple negligence or mistake, to willful conduct which takes advantage of a judge’s position for greed or other inappropriate motives.”[33]

6. The presence or absence of mitigating or aggravating circumstances.

¶ 17. We find Judge Dearman’s cooperation with the Commission to be a mitigating factor. However, this is her second *1145 formal disciplinary action before this Court. In this case, she willfully violated the Code of Judicial Conduct even though she recently had acknowledged her misconduct in Dearman I.
CONCLUSION
¶ 18. After considering Judge Dear-man’s conduct in light of the Gibson factors, we impose suspension without pay for thirty days, a public reprimand, and costs of $100 upon her. While her conduct is analogous to that in Thompson, in which we imposed only a public reprimand and costs, we find a harsher sentence is warranted in light of her recent misconduct in Dearman I. The Clerk of this Court shall send copies of this opinion and the mandate of this Court to the Chancery Clerk of Stone County, to the Circuit Clerk of Stone County as well as to the Stone County Justice Court Clerk, the County Administrator for Stone County, and the Stone County Board of Supervisors.
¶ 19. STONE COUNTY JUSTICE COURT JUDGE TERESA BROWN DEARMAN SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF THIRTY DAYS WITHOUT PAY, EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT’S MANDATE; PUBLICLY REPRIMANDED; AND ASSESSED COSTS OF $100. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE STONE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VE-NIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE DEARMAN IN ATTENDANCE.
WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. In re Anderson, 412 So.2d 743, 746 (Miss.1982).

. Id.

. Miss. Comm'n on Judicial Performance R. 10(E).

. Miss. Const, art. 6, § 177A(b),(e).

. Miss. Comm’n on Judicial Performance v. U.U., 875 So.2d 1083, 1088-89 (Miss.2004).

. Miss. Comm'n on Judicial Performance v. Vess, 10 So.3d 486, 489 (Miss.2009).

. Miss. Comm'n on Judicial Performance v. Buffington, 55 So.3d 167, 169 (Miss.2011) (citations omitted).

. Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), overruled in part by Miss. Comm'n on Judicial Perfonnance v. Boone, 60 So.3d 172 (Miss.2011).

. Miss. Comm’n on Judicial Performance v. Britton, 936 So.2d 898, 906 (Miss.2006).

. Miss. Comm'n on Judicial Peiformance v. Brown, 761 So.2d 182, 183 (Miss.2000).

. Id.

. Id. at 184.

. Id. at 186.

. Miss. Comm'n on Judicial Performance v. Cole, 932 So.2d 9, 10 (Miss.2006), overruled in part by Miss. Comm'n on Judicial Performance v. Boone, 60 So.3d 172 (Miss.2011).

. Id.

. Id.

. Id. at 10, 12.

. Miss. Comm’n on Judicial Peformance v. Thompson, 972 So.2d 582, 584-85 (Miss.2008), overruled in part by Miss. Comm’n on Judicial Peformance v. Boone, 60 So.3d 172 (Miss.2011).

. Id.

. Id. at 588.

. Id. at 589.

. Miss. Comm'n on Judicial Peformance v. Brown, 918 So.2d 1247, 1250 (Miss.2005).

. Id.

. Id. at 1251, 1255.

. Id. at 1258.

. Id.

. Miss. Comm’n on Judicial Performance v. Dearman (Dearman I), 66 So.3d 112 (Miss.2011).

. Id. at 114.

. Gibson, 883 So.2d at 1158.

. Miss. Comm’n on Judicial Performance v. Roberts, 952 So.2d 934, 942 (Miss.2007).

. Miss. Comm’n on Judicial Performance v. Vess, 10 So.3d 486, 493 (Miss.2009) (quoting Miss. Comm’n on Judicial Performance v. Gordon, 955 So.2d 300, 305 (Miss.2007)).

. Roberts, 952 So.2d at 942.

. Vess, 10 So.3d at 493 (quoting Gordon, 955 So.2d at 305).